### GRISWOLD v. BACHELLER.

(Circuit Court, D. Rhode Island. June 27, 1896.)

1. JURISDICTION OF FEDERAL COURTS—CITIZENSHIP OF TRUSTEES.
   The federal court in Rhode Island has jurisdiction of a suit brought by a trustee, a citizen of New York, whose cestui que trust is a citizen of Rhode Island, against a citizen of Rhode Island, where the controversy relates to the possession or title to lands in that state, and does not affect the relation of the trustee with his cestui que trust.

2. EQUITY JURISDICTION.
   A bill alleged that complainant had granted to defendant a parol license to remove part of a fence separating complainant's premises from defendant's blacksmith's shop, and to exercise certain privileges upon complainant's premises, and that defendant, in return, gave a penal bond conditioned for the discontinuance of the exercise of such privileges and the restoration of said fence, on 60 days' notice of the revocation of said license; that thereafter complainant accordingly gave notice of revocation, whereupon defendant duly restored the fence, and ceased for a time to exercise the privileges mentioned; but that thereafter the fence was again removed by persons unknown, who were instigated thereto by defendant, and defendant then resumed the exercise of the privileges in defiance of complainant's commands. The bill then charged that the restoration of the fence was a mere sham, without any intention on the part of defendant to really carry into effect the agreement to discontinue the exercise of the said privileges when notified, and alleged damages, and prayed an injunction. Held, that the conditions of the bond had been fully performed and ended by the restoration of the fence and abandonment of the said privileges; that the contract was not a perpetually existing one; and hence that there was no ground of equitable jurisdiction.

Edward D. Bassett, for complainant.
William P. Sheffield, Jr., for respondent.

CARPENTER, District Judge. This is a bill in equity, brought by John N. A. Griswold, alleged to be a citizen of New York, against Joshua B. Bacheller, alleged to be a citizen of Rhode Island. The bill alleges that the complainant "is now, and since December 7,

1878, has been, seised and possessed in fee simple of certain lands, wharves, and premises, known as the 'Commercial Wharf Estate,' in said city of Newport, and bounded easterly by Thames street, southerly by lands and premises of the heirs or devisees of John B. Langley, deceased (said lands and premises being commonly known as the 'Langley Wharf Estate'), and westerly by the waters of the harbor of said city of Newport"; and "that on or about the 18th day of November, 1885, the respondent, said Joshua B. Bacheller, whose occupation since that time has been, and is now, that of a blacksmith, engaged in the business of shoeing horses, and making repairs to wagons, carts, and other vehicles, became a tenant of a certain blacksmith's shop situate near the northerly boundary line of said Langley wharf estate, the northerly side of which said blacksmith's shop has been, and is, distant from the afore-described boundary fence about three feet, and thereupon requested your orator to license him to cut down the portion of the fence which then divided the said Commercial wharf estate from the said Langley wharf estate opposite to said blacksmith's shop, and to connect the premises so occupied by him on said Langley wharf estate by a platform with the plank sidewalk before described, and to use the roadways and sidewalks of said Commercial wharf estate in connection with his said business of a blacksmith; and your orator, being desirous of accommodating the said Joshua B. Bacheller, licensed him by parol to exercise the said privileges, and thereupon received from the said Joshua B. Bacheller the bond of the said Joshua B. Bacheller (with one Overton G. Langley as surety) in the penal sum of one hundred dollars, conditioned for the payment to your orator (as compensation for the said licenses) of the sum of fifteen dollars annually, and for the discontinuance by said obligor of the exercise of the privileges so accorded to him by your orator, and for the restoration by the said obligor of the aforesaid partition fence and other property of your orator to the condition in which said fence and property were before the sealing and delivery of the said bond, after the expiration of sixty days' notice to the said Joshua B. Bacheller of the revocation of said licenses." The bill further alleges that the complainant, "in the exercise of the right reserved by him at the time of the giving of the said parol licenses, on the 3d day of June, 1895, gave written notice to the said respondent, said Joshua B. Bacheller, of the revocation of all the said privileges, after the expiration of sixty days from and after the giving of the said notice of revocation"; and "that, pursuant to said notice of revocation, the said respondent, on or about the 18th day of November, 1895, proceeded to, and did, remove the aforesaid platform by means of which his said blacksmith's shop was connected with the said plank walk, and thereupon re-erected a partition fence between the said two estates, opposite his said blacksmith's shop, in all respects similar to the other portions of said partition fence, and similar to that portion of said partition fence which had been removed by the said respondent in the month of November, 1885, and thereafter, for a short period of time, discontinued the exercise of the privileges of using the aforesaid roadways

and sidewalk." The bill then alleges that on the 20th day of November, 1895, "in a severe rainstorm," the fence was removed by persons unknown to the complainant, and alleged to be "confederates of the said respondent," and "instigated to commit the said trespass either by him or by other persons acting in his behalf and in his interest"; that the complainant caused a fence of barbed wire to be constructed in place of that which had been removed, which wire fence was on the 5th day of December, 1895, "during a heavy snowstorm," removed in like manner by persons unknown; "that since the 5th day of December, 1895, the said respondent has defiantly exercised all of the privileges which had been accorded to him by your orator by the parol licenses aforesaid, and has also, on several occasions, exercised other privileges in and upon the said Commercial wharf estate and the said plank walk and roadway thereon, for which he has never received any license whatever from your orator, and since said time has asserted and exercised the right, in defiance of your orator's express command, to obstruct the said plank walk while removing snow from his said platform, and by drawing vehicles across the same into his said shop, and has obstructed the said macadamized roadway and the said railway tracks by placing vehicles thereon, sometimes unattended by any driver or other person, for a considerable space of time, and has on every day since said 5th day of December, 1895, exercised the privilege for himself and his workmen of walking upon the said plank walk and roadway to and from his said blacksmith's shop and the public highway." The bill then "charges on information and belief that the said respondent intends to exercise all of the privileges which had been accorded to the said respondent by your orator by virtue of the aforesaid parol license in the future, as a matter of right, in spite of the obligation assumed by the said respondent in his aforesaid bond. And your orator further charges that the re-erection of the aforesaid boundary fence between your orator's estate and the said Langley wharf estate was a mere sham, contrived by the said respondent and other persons acting with him, whose names are unknown to your orator, for the purpose of appearing to conform to all of the requirements of the said respondent's obligation, but without any intention on the part of the said respondent really to carry into effect his said agreement to discontinue the use of the said privileges when duly notified by your orator,"—and alleges damages to the complainant, and prays for an injunction.

To this bill, the respondent pleads "that one Samuel R. Honey, of the city and county of Newport, in the state of Rhode Island, a citizen of the said state of Rhode Island, is the equitable owner in fee simple of one-half of the real estate described in the complainant's bill, and is a necessary party to this suit, this respondent also being a citizen of said state of Rhode Island," and demurs on the ground "that the complainant, by his said bill of complaint, seeks to have this respondent enjoined against committing acts which he alleges in his bill to be acts of trespass, when in fact he has not established at law his right to prevent the respondent from doing the acts of which he complains, and because, upon the face of the

said bill and exhibits, the complainant has an adequate remedy at law for the alleged injuries complained of." The plea and demurrer now come on for hearing.

The plea raises the question whether this court has jurisdiction of a suit by a trustee, being a citizen of New York, when the cestui que trust is a citizen of Rhode Island. Since the action relates only to the possession or perhaps to the title of the property, and does not affect the relation of the trustee with his cestui que trust, I conclude that the suit may be maintained. Carey v. Brown, 92 U. S. 171; Dodge v. Tulleys, 144 U. S. 451, 12 Sup. Ct. 728.

On the question of general equity jurisdiction, raised by the demurrer, the complainant defends the bill as "framed for the purpose of compelling specific performance of the conditions of the bond." and refers to the alleged trespasses as being "the specific violations of those conditions." I am unable to see that there is now resting on the respondent any obligation in consequence of the grant of the license and the execution of the bond. They imply, doubtless, a covenant or agreement for peaceable possession at the expiration of the license, and, in addition, for a restoration of the fence. These agreements appear to have been fully performed; and I cannot see, on the allegations of the bill, any evidence of a contract perpetually existing, and perpetually binding the respondent, as to any matter of right whatsoever. In this view of the case, there is no ground for equitable relief. The plea will therefore be overruled; the demurrer will be sustained; and the bill will be dismissed.